IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-34722-KLP |
| CHARLES EDWARD ALEXANDER | ) | Chapter 13 |
| | ) | |
| Debtor | ) | |

| | | |
|---|---|---|
| CHARLES EDWARD ALEXANDER | ) | |
| | ) | |
| Movant, | ) | |
| | ) | RICHMOND DIVISION |
| v. | ) | FILED DEC 2 2 2020 |
| | ) | CLERK |
| DAVID TATUM d/b/a Tatum Paint | ) | U.S. BANKRUPTCY COURT |
| and Body Shop, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT'S RESPONSE AND MEMORANDUM IN
OPPOSITION TO DEBTOR-MOVANT'S MOTION FOR
TURNOVER OF PROPERTY OF THE ESTATE AND FOR RESPONDENT
TO SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT
FOR VIOLATION OF THE AUTOMATIC STAY**

COMES NOW, Respondent, David Tatum d/b/a Tatum Paint and Body Shop, by counsel, and pursuant to Local Bankruptcy Rule 9013-1(H) hereby submits Respondent's Response and Memorandum in Opposition to Debtor-Movant's Motion for Turnover of Property of the Estate and for Respondent to Show Cause Why It Should Not Be Held in Contempt for Violation of the Automatic Stay, stating as follows:

## **RESPONSE**

1. On October 23, 2020, Debtor-Movant Charles Edward Alexander entered into an agreement to purchase a used 2008 Chevrolet Malibu from Respondent David Tatum d/b/a Tatum Paint and Body Shop for the total cash price, including taxes and fees, of $4,860.39. A copy of the Buyer's Order form for this purchase transaction is attached hereto as Exhibit 1.

2. At the time of sale, Debtor-Movant issued a check to Respondent in the amount of $1,266.39 that was purportedly drawn on a Navy Federal Credit Union account numbered 8924067180. A copy of this check is replicated on the notice sent by First Citizens Bank to Respondent and attached hereto as Exhibit 2.

3. After deducting the face amount of Debtor-Movant's check, a balance of $3,594.00 remained on the cash purchase price of the 2008 Chevrolet Malibu. (*See* Exhibit 1.)

4. To complete the purchase transaction, Debtor-Movant on October 23, 2020, executed a Retail Installment Contract in Respondent's favor whereby Debtor-Movant agreed to finance the remaining amount due on the vehicle. A copy of this Retail Installment Contract is attached hereto as Exhibit 3.

5. Page 1 of the Retail Installment Contract states that Debtor-Movant paid a down payment of $1,266.39 on the subject vehicle. (Exhibit 3, at p. 1.)

6. The remaining purchase price was to be repaid in 16 monthly installments of $250.00 beginning November 23, 2020 and one final installment of $110.77 on March 23, 2022. (*Id.*)

7. Respondent retained a security interest in the subject vehicle until the purchase price was paid in full. (*Id.* at p. 2.)

8. The Retail Installment Contract provides that a default by Debtor-Movant as buyer would occur upon Debtor-Movant's "failure to perform or breach any section of this contract; . . . any misstatement or misrepresentation by [Debtor-Movant] relied on by [Respondent]; [or Debtor-Movant] become[s] insolvent." (*Id.*) In the event of default, or if Respondent "believe[s] in good faith that [Debtor-Movant is] not going to keep any of [Debtor-Movant's] promises," then Respondent reserved the right to "repossess the vehicle; take any reasonable measures to correct the default or save [Respondent] from loss; or pursue any other remedy permitted by law in recovering the full remaining amount due." (*Id.*) In addition, Debtor-Movant "will pay the reasonable costs and expenses of these measures, to the extent the law allows." (*Id.*)

9. The next paragraph of the Retail Installment Agreement is entitled **"REPOSSESSION"** and states that if Debtor-Movant, as buyer, is in default, Respondent "may take the vehicle from [Debtor-Movant] if [Respondent] may do so without a breach of the peace." (*Id.*)

3

10. On November 10, 2020, First Citizens Bank issued a notice to Respondent that Debtor-Movant's check had been returned and Respondent's First Citizens Bank account had been debited for the return check. (*See* Exhibit 2.)

11. The reason given for the return of Debtor-Movant's Navy Federal Credit Union check was "NO ACCOUNT" and "UNABLE TO LOCATE ACCT." (*Id.*)

12. As demonstrated by the notice from First Citizens Bank to Respondent, Debtor-Movant issued a check to Respondent on a nonexistent bank account in order to acquire possession of the 2008 Chevrolet Malibu from Respondent.

13. Debtor-Movant knew at the time he issued the check on a nonexistent bank account that he was writing a bad check to Respondent for the purpose of acquiring possession of the subject vehicle.

14. The nonexistence of the bank account on which Debtor-Movant's check was drawn reflects an intent by Debtor-Movant never to have sufficient account funds to fulfil the check.

15. Given the fact that Debtor-Movant's check for the down payment of the subject vehicle was returned because it was made on a nonexistent account, the facts on which the financing transaction was based were untrue. (*See* Exhibit 3, at p. 1.)

16. Debtor-Movant was in default of the Retail Installment Contract because (a) he breached the agreement; (b) he made a misstatement or

4

misrepresentation of his financial circumstances to Respondent which Respondent relied on by entering into the Retail Installment Contract and releasing possession of the subject vehicle to Debtor-Movant; and (c) became insolvent before or shortly after the time of purchase. (*Id.* at p. 2.)

17. On November 30, 2020, Debtor-Movant filed his Chapter 13 bankruptcy petition with this Court.

18. In a telephone conversation held on December 15, 2020, Debtor's counsel, John M. Janson, informed Debtor-Movant's counsel that Debtor-Movant had obtained the subject vehicle by knowingly writing a bad check to Respondent and that Debtor-Movant's filing of his Chapter 13 petition was part of Debtor-Movant's fraudulent scheme.

19. In response, Debtor-Movant's counsel filed the instant motion and set an expedited hearing date of December 22, 2020.

## MEMORANDUM IN OPPOSITION TO MOTION

Under the circumstances presented here, the subject vehicle should be classified as Respondent's property that is not subject to the bankruptcy estate. Debtor-Movant has no right to retain possession of the vehicle.

Pursuant to 11 U.S.C. § 523(a)(2)(A), a debt that a debtor incurs by fraud or misrepresentation is exempt from discharge in bankruptcy. Proof of fraud under

subsection (2)(A) "requires satisfaction of the elements of common law fraud: (1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 334 (4th Cir. 2013).

A debt incurred by the debtor's issuance of a bad check to a creditor may be classified as exempt from discharge in bankruptcy under § 523(a)(2)(A) if the creditor establishes by a preponderance of the evidence that the debtor "had the intention to deceive the creditor at the time the check was given." *In re Basham*, 106 B.R. 453, 457 (Bankr. E.D. Va. 1989).

The court may infer intent from the circumstances of the subject transaction. *Id.* at 457-58. This may occur where the financial circumstances of the debtor are so precarious as of the date of purchase that the debtor could have had no reasonable expectation of making the check good within a reasonable time. *In re Penn Table Co.*, 26 F. Supp. 887, 889-90 (S.D. W. Va. 1939). Any evidence indicating that the debtor never intended to have funds in his account to fulfil the account is also relevant. *In re Eason*, 1 B.R. 604, 607 (Bankr. E.D. Va. 1979).

Here, it is evident that Debtor-Movant intended to deceive Respondent into relinquishing possession of the subject vehicle by falsely representing that he wished to purchase the vehicle for the stated purchase price, writing a bad check on a nonexistent bank account for the down payment of the vehicle, and then filing his

6

Chapter 13 bankruptcy petition shortly after Respondent's bank notified Respondent of the returned check. This is not the usual case in which a buyer issues a check for an amount that slightly exceeds the present balance of his/her account. Rather, Debtor-Movant here issued a check for the down payment of an automotive vehicle on an account that he knew did not even exist.

Debtor-Movant clearly intended to deceive Respondent into completing the sales transaction and to thereby obtain possession of a valuable motor vehicle without any intent of paying Respondent any amount whatsoever for the vehicle. Stated differently, Debtor-Movant's writing of a check to cover the vehicle's down payment on a bank account that Debtor-Movant knew did not exist is reflective of his intent never to have funds in his account to satisfy the debt. *See Eason*, 1 B.R. at 607.

"Property obtained by a debtor's fraud is not part of that debtor's estate." *In re Chapman*, 265 B.R. 796, 821 (Bankr. N.D. Ill. 2001), *aff'd sub nom. Chapman v. Charles Schwab7 & Co.*, No. 00 A 0358, 2002 WL 818300 (N.D. Ill. Apr. 30, 2002); *see also In re M & L Bus. Mach. Co., Inc.*, 59 F.3d 1078, 1081 (10th Cir. 1995); *In re N. Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1576 (9th Cir.), *amended*, 774 F.2d 1390 (9th Cir. 1985), *cert. denied, Daniel A. Torres, M.D., P.C. v. Eastlick*, 475 U.S. 1083, 106 S. Ct. 1462, 89 L.Ed.2d 719 (1986); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1136 (8th Cir. 1984), *cert. denied, Reavis & McGrath v. Antinore*,

7

469 U.S. 1207, 105 S. Ct. 1169, 84 L.Ed.2d 320 (1985); *In re Teltronics Ltd.*, 649 F.2d 1236, 1239 (7th Cir.1981); *Matter of Paragon Sec. Co.*, 589 F.2d 1240, 1242 (3d Cir. 1978); *Nicklaus v. Bank of Russellville*, 336 F.2d 144, 146-147 (8th Cir.1964); *In re Tap, Inc.*, 52 B.R. 271, 279 (Bankr. D. Mass. 1985).

"Thus, where fraudulently obtained assets are held by the debtor but are readily distinguishable from assets to which general creditors have a claim, it is proper to return the property to the defrauded party rather than distribute it through the estate, which of course seeks to distribute assets equitably among all creditors or as many as possible." *M & L Bus. Mach.*, 59 F.3d at 1081.

As a corollary matter, if an insolvent person purchases goods by concealing his insolvent condition and without intending to pay, the seller is justified in reclaiming the goods. *California Conserving Co. v. D'Avanzo*, 62 F.2d 528, 529 (2d Cir. 1933); *Penn Table Co.*, 26 F. Supp. at 889. In effect, the seller is entitled to rescind the contract and reclaim the goods obtained by the insolvent person's fraud so long as the goods are identifiable in the trustee's hands. *Manly v. Ohio Shoe Co.*, 25 F.2d 384, 385 (4th Cir. 1928). "This is on the theory that fraud renders all contracts voidable, and that neither in law nor in morals would the trustee be justified in holding goods obtained by the fraud of the bankrupt for the benefit of other creditors." *Id.*

Here, Respondent elected to exercise his legal and contractual right to rescind the vehicle purchase contract and to reclaim the Chevrolet Malibu that Debtor-Movant acquired by fraud. Under the circumstances, the subject vehicle should be considered the property of Respondent and not of the bankruptcy estate. *See M & L Bus. Mach.*, 59 F.3d at 1081; *California Conserving*, 62 F.2d at 529; *Manly*, 25 F.2d at 385; *Penn Table Co.*, 26 F. Supp. at 889; *see also N. Am. Coin*, 767 F.2d at 1576; *Flight Transp.*, 730 F.2d at 1136; *Teltronics*, 649 F.2d at 1239; *Paragon Sec.*, 589 F.2d at 1242; *Nicklaus*, 336 F.2d at 146-147; *Chapman*, 265 B.R. at 821; *Tap*, 52 B.R. at 279.

Notably, the Retail Installment Contract provides that upon Debtor-Movant's default and Respondent's repossession of the vehicle, Debtor-Movant would be responsible for the reasonable costs and expenses that Respondent incurred in repossessing the vehicle, to the extent the law allows. (Exhibit 3, at p. 2.) This clause is fully enforceable against Debtor-Movant. *See Textron Fin. Corp. v. Full Tilt Marine, Inc.*, No. 1:08CV676, 2009 WL 10688040, at *4 (E.D. Va. June 17, 2009) (enforcing contractual attorney's fee provision stating that repossession costs would be debtor's responsibility).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Debtor-Movant's Motion and all relief requested therein. In addition, the Court should enter an Order finding that Respondent is entitled to retain title to and possession of the subject vehicle, releasing Respondent from the Debtor's bankruptcy case, awarding Respondent attorney's fees and costs, and for such other and further relief that the Court should deem appropriate.

Dated: December 21, 2020

                                          Respectfully submitted,

                                          /s/ John M. Janson
                                          John M. Janson, Esquire
                                          VSB #91236
                                          830 West High Street
                                          South Hill, VA 23970
                                          Telephone: (434) 953-8794
                                          Email: johnmjanson@gmail.com

                                          *Counsel for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2020, I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system which will provide notice to all persons required to be served as well as by email and/or United States mail to Debtor-Movant's counsel:

James E. Kane
KANE & PAPA, P.C.
1313 East Cary Street
Richmond, VA 23219
Email: jkane@kaneandpapa.com

*Counsel for Debtor-Movant*

/s/ John M. Janson
John M. Janson, Esquire

*Counsel for Respondent*